In the Matter of the WARDSHIP OF Stefanie Jeanne NAHRWOLD, Betty Jeanne Nahrwold, Respondent-Appellant,

v.

DEPARTMENT OF PUBLIC WELFARE OF ALLEN COUNTY, Indiana, Petitioner-Appellee.

No. 3-980A270.

Court of Appeals of Indiana, Third District.

Oct. 29, 1981.

Rehearing Denied Jan. 12, 1982.

Warren W. Wyneken, Fort Wayne, for respondent-appellant.

Robert E. Ross, Fort Wayne, for petitioner-appellee.

GARRARD, Judge.

*Statement of the Case*

On March 10, 1980 the minor child of Betty Nahrwold was taken into custody by the Department of Public Welfare of Allen County. On March 11, 1980 the Department filed a request for the filing of a

formal petition and for taking custody of the child. A hearing was held on March 12, 1980 before Robert Schmoll, Referee of the Family Relations Division of Allen Superior Court. The referee made recommendations which were approved and adopted by Judge Louis Bloom. Upon these recommendations the child was released to her mother after the mother consented to an informal adjustment program. The mother, Betty Nahrwold, now appeals.

### Statement of the Facts

An anonymous source informed the Department of Public Welfare of Allen County of a possible case of child abuse. Acting on that information a caseworker and law enforcement officer went on March 10, 1980 to the residence of Betty Nahrwold, the appellant herein. At the residence they found Betty Nahrwold's eight year old daughter alone and unsupervised. The daughter, Stefanie Nahrwold, allowed the caseworker and detective to enter the residence. The caseworker then asked Stefanie questions and examined the child for evidence of physical abuse. On the basis of that examination the caseworker took the child into custody.

On March 11, 1980 the Department of Public Welfare (Welfare Department) filed a request for the filing of a formal petition and for taking custody of a child in need of services pursuant to IC 31–6–4–10. Also on that day the caseworker filed a report of preliminary inquiry and investigation.

On March 12, 1980, pursuant to IC 31–6–4–6(e), a hearing was held before the referee. Present at that hearing were two representatives of the Welfare Department, the appellant Betty Nahrwold, her counsel, several individuals whom Nahrwold brought to testify in her behalf, and the subject child, Stefanie Nahrwold. When the hearing commenced Nahrwold's counsel requested that a record of the proceedings be made. In response the referee stated that the proceedings were informal and denied the request. Testimony was heard from Stefanie, Betty Nahrwold, and the caseworker. Nahrwold's counsel then re-

quested that the appellant be allowed to present evidence in support of her good character and fitness as a mother. The referee denied this request on the basis that the proceeding was informal and in the nature of a probable cause determination rather than a fact-finding adjudication.

The preliminary inquiry and investigation report filed by the caseworker recommended that the child be released into the custody of the mother on the condition that the mother submit to counseling and the supervision of the Welfare Department. Such a program of informal adjustment may be implemented pursuant to IC 31–6–4–12 if the child and parent consent and the juvenile court approves. Following the caseworker's recommendation the referee stated that the child would be released into Nahrwold's custody at that point in the proceedings if she consented to the program of informal adjustment. After consultation with her counsel and with the knowledge that compliance was the only way to regain immediate custody of her child, Nahrwold consented to the informal adjustment program. The child was then released to the appellant subject to the supervisory functions of the Welfare Department.

### Issues

We restate the issues which appellant presents for review:

(1) Did the trial court's denial of the request for a record constitute an abuse of discretion?

(2) Was Nahrwold denied due process because the trial court refused to allow her to present witnesses?

### Discussion and Decision

In her brief Ms. Nahrwold first urges that the referee erred when he refused the request to have a record made of the proceeding. She argues that the failure to have a record made in a proceeding where the state is intruding into the parent-child relationship constitutes an abuse of discretion. Nahrwold has not cited authority for this argument, but asserts that the abuse is manifest.

In presenting her appeal Nahrwold utilized Indiana Rules of Procedure, Appellate Rule 7.2(A)(3)(c) which provides that where no record is available, "a party may prepare a statement of the evidence or proceeding from the best available means, including his recollection." When approved by the trial court this statement will suffice as a record for the requirements of an appeal. Accordingly, while a verbatim transcript is certainly preferable in fact determining proceedings, the lack of a contemporaneous record in the present probable cause determination did not deny Nahrwold her right to have appellate review of an adverse decision. Furthermore, in her motion to correct errors Nahrwold did not allege that the failure to have a record made constituted an abuse of discretion. Rather she argued that the referee's refusal to have a record made was a denial of due process. Therefore, the abuse of discretion argument is raised belatedly for the first time in appellant's brief and has not been properly preserved for our review. However, the appellant's argument that due process requires a contemporaneous verbatim record raises the same substantive issue which we must consider in determining the merits of appellant's second issue: what process is due in a detention hearing?

Nahrwold contends that as a parent she was denied due process because the referee denied her request to present evidence in her own behalf. We note that the appellant's brief again fails to cite any authority directly on point with this due process argument. Admittedly, the question of what procedure should be followed in a detention hearing held pursuant to IC 31–6–4–6(e) is one of first impression in this state. Accordingly this issue merits our full consideration.

The essence of Nahrwold's contention is that the procedure followed in the hearing held pursuant to IC 31–6–4–6(e) was constitutionally infirm because the referee denied her request for a record and because he would not afford her the opportunity to present witnesses. These issues can be consolidated into one: what process is constitutionally due a parent in a detention hearing held pursuant to IC 31–6–4–6(e)?

In *Quilloin v. Walcott* (1978), 434 U.S. 246, 255, 98 S.Ct. 549, 554, 54 L.Ed.2d 511, the United States Supreme Court stated that:

"We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected. *See, e. g., Wisconsin v. Yoder,* 406 U.S. 205, 231–233, 92 S.Ct. 1526, 1541–42, 32 L.Ed.2d 15 (1972); *Stanley v. Illinois* [, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551] *supra; Meyer v. Nebraska,* 262 U.S. 390, 399–401, 43 S.Ct. 625, 626–27, 67 L.Ed. 1042 (1923). 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944). And it is now firmly established that 'freedom of personal choice in matters of . . . family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment.' *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 639–640, 94 S.Ct. 791, 796, 39 L.Ed.2d 52 (1974)."

In other words, a parent has a fundamental right to raise her child without undue interference by the state, and the parent-child relationship includes a parent's right to have unrestrained custody of her child. Of course, these rights are balanced against the parental duty to provide for the physical and mental well-being of one's children. When the parent fails to fulfill this duty the state has the authority:

"... pursuant to its *parens patriae* power, to intervene when parental neglect, abuse or abandonment has been established. In such a case the state most certainly has a compelling interest in protecting the welfare of the child."

*In the Matter of Joseph* (1981), Ind.App., 416 N.E.2d 857, 860.

The Indiana Juvenile Code provides the criteria for determining when a child is in need of services, and the proceedings the

state must conduct when acting to protect the welfare of such a child. Nahrwold argues that in the detention hearing held pursuant to IC 31–6–4–6(e), the procedure followed by the referee denied her due process. As is well recognized:

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."

*Mathews v. Eldridge* (1976), 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18.

However:

" 'Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)."

*Id.* at 424 U.S. 334, 96 S.Ct. at 902.

Accordingly, we must look to the procedures followed by the state and the court and consider to what degree they impinge upon the parental rights in order to ascertain what process is due in this particular situation.

IC 31–6–4–4(c) provides that:

"A child may be taken into custody by any law enforcement officer, probation officer, or caseworker acting with probable cause to believe the child is a child in need of services if:

(1) it appears that the child's physical or mental condition will be seriously impaired or seriously endangered if he is not immediately taken into custody; and

(2) there is no reasonable opportunity to obtain an order of the court."

IC 31–6–4–3 (West 1979) defines the circumstances under which a child can be considered to be in need of services. The caseworker who took Stefanie into custody determined that she was a child in need of services.

The evidence disclosed that she was regularly left without supervision from 3:30 p. m. until about 5:10 p. m. In addition, it appeared that the child had been spanked with a metal spatula so as to cause bruises or marks.[1]

The caseworker did not have a court order but acted under the authority of IC 31–6–4–4(c). IC 31–6–4–6(d) (West 1979) provides that if the child is taken into custody without a court order and detained, an intake officer is required to investigate the reasons for the detention. The child can be released to his parent or further detained if the intake officer reasonably believes that the child is in need of services and one of four statutory conditions is met.[2] If the child is not released, IC 31–6–4–6(e) requires that a detention hearing be held within 72 hours after the child is taken into custody. Notice of that hearing shall be given to the parent if he can be located. IC 31–6–4–6(f) (West 1979) states that after the hearing the child shall be released or:

"... [T]he court may order the child detained if it makes written findings of fact upon the record of probable cause to believe that the child is a child in need of services and that:

(1) detention is necessary to protect the child;

(2) the child is unlikely to appear before the juvenile court for subsequent proceedings;

---

1. IC 31–6–4–3 defines a child in need of services to include a child under eighteen (1) whose physical or mental condition is seriously endangered by lack of supervision; or (2) whose physical or mental health is seriously endangered due to injury by the act or omission of the parent.

2. IC 31–6–4–6(d):

"(1) detention is necessary to protect the child;
(2) the child is unlikely to appear before the juvenile court for subsequent proceedings;
(3) the child has a reasonable basis for requesting that he not be released; or
(4) the parent, guardian, or custodian cannot be located or is unable or unwilling to take custody of the child."

(3) the child has a reasonable basis for requesting that he not be released; or

(4) the parent, guardian, or custodian cannot be located or is unable or unwilling to take custody of the child."

In the present case after the detention hearing the referee released the child because the mother consented to the program of informal adjustment under IC 31–6–4–12. The program of informal adjustment can be implemented by the intake officer if he has probable cause to believe the child is in need of services.

 In summary, throughout the proceedings, the Welfare Department and the court acted on the basis that they had probable cause to believe that Stefanie was a child in need of services. No adversarial fact-finding hearing in which the appellant could present evidence in her favor, other than her own account, was held. IC 31–6–4–14 provides that a fact-finding hearing shall be held *after* a petition alleging the child is a child in need of services is authorized by the court pursuant to IC 31–6–4–10(a). The court here did not authorize the filing of a petition. When Betty Nahrwold consented to the informal adjustment program the authorization of a petition was no longer necessary in order to resolve the matter. The proceedings had not progressed to the stage where a fact-finding hearing was statutorily required. However, the parental rights of Betty Nahrwold had been undoubtedly affected. Her daughter had been removed from her custody for two nights and the parent-child relationship was subjected to the supervisory functions of the Welfare Department.[3] The question then is whether Betty's parental rights were so jeopardized and impinged upon at the hearing that due process required that Betty have an opportunity to present witnesses.

We find that in the present case Betty Nahrwold was afforded the process due her in the particular situation. The referee properly utilized the hearing to satisfy two statutory requirements. Pursuant to IC

31–6–4–6(e) (West 1979) a detention hearing must be held within seventy two hours after the child is taken into custody. The child may be released or detained under IC 31–6–4–6(f) if the court finds *probable cause* to believe the child is a child in need of services and that one of four statutory conditions are met (IC 31–6–4–6(e) as quoted above).

Also, IC 31–6–4–10(b) (West 1979) provides:

"The juvenile court shall consider the preliminary inquiry and the evidence of probable cause. The court shall authorize the filing of a petition if it finds probable cause to believe that the child is a child in need of services."

Accordingly, after a child is taken into custody and detained the court must make two probable cause determinations; one as to whether further detention is proper and the other as to whether the court should authorize the filing of a petition to adjudicate the matter of whether the child is a child in need of services. Only after a petition is authorized does the court engage in dispositional or fact-finding hearings, IC 31–6–4–13.5, which potentially can result in a decree which terminates or alters the parental rights to the custody of one's child, IC 31–6–4–16. Because such proceedings may so adversely affect parental rights, IC 31–6–3–2(a) provides:

"Sec. 2 (a) A parent, guardian, or custodian is entitled:

(1) to cross-examine witnesses;

(2) to obtain witnesses or tangible evidence by compulsory process; and

(3) to introduce evidence on his own behalf; in the proceedings listed in subsection (b).

(b) Subsection (a) applies to proceedings;

(1) to determine whether his child is a child in need of services; . . . ."

 At the dispositional or fact-finding hearing held pursuant to IC 31–6–4–13.5 the issue of whether the subject child is a child in need of services is actually adjudi-

---

**3.** Pursuant to the statute an informal adjustment may extend for six months and may be extended by the court for an additional six months. IC 31–6–4–12(c).

cated *and* the parent is entitled to those adversarial rights enumerated in IC 31–6–3–2(a), as noted above. One such right, of course, is the opportunity to present evidence on one's own behalf. While Nahrwold argues that she should have been afforded such an opportunity at her hearing, we find that neither due process nor the statutory scheme under which the proceeding was held requires that she be permitted to call character witnesses at this stage. It is sufficient that she was given the opportunity to be present with counsel and state her version or explanation of the events in question. The hearing was not intended to be adjudicatory in nature. It was a preliminary proceeding for the purpose of determining whether probable cause existed for the detention of the child and for the filing of a petition. While a parent's right to the custody of his child cannot be terminated by less than a full adjudicatory hearing, the Welfare Department or the court can intervene in the parent-child relationship on the basis of a probable cause determination that the subject child is in need of services.

■ In an analogous situation in criminal law, the United States Supreme Court has determined that the:

"... full panoply of adversary safeguards—counsel, confrontation, cross-examination, and compulsory process for witnesses ... are not essential for the probable cause determination required by the Fourth Amendment. The sole issue is whether there is probable cause for detaining the arrested person pending further proceedings. This issue can be determined reliably without an adversary hearing."

*Gerstein v. Pugh* (1975), 420 U.S. 103, 119–20, 95 S.Ct. 854, 865–66, 43 L.Ed.2d 54. If an accused individual does not have a due process right to a full adversary hearing when the probable cause for his arrest and incarceration are determined, then a parent suffers no prohibited lack of due process when her child is temporarily removed from her if a reasonable basis exists to believe that the child is a child in need of services.

In addition we must note the legislative purpose to secure informal adjustments in matters of this type involving children. While the dissenting view would certainly afford parents additional protection in such proceedings, we believe it would unduly formalize them and thereby impede the amicable processes intended by the legislature.

■ Nahrwold also argues that she was coerced into signing the informal adjustment program. The referee had made release of the child conditional on Betty Nahrwold's submitting to the program. Appellant agreed to the program because compliance was the means by which she could obtain immediate custody of her child.

Thus Nahrwold argues that she was compelled to follow the recommendations of the referee, and that she "voluntarily agreed to nothing." We note this aspect of appellant's argument because it demonstrates a means by which a referee can achieve the resolution of a child in need of services question without the necessity of authorizing a petition. As discussed above, only proceedings conducted subsequent to the authorization of the petition are adjudicatory in nature. If parents acquiesce in the conditions for release of the child stipulated by the court as Nahrwold did in the present case, their rights are affected before they have an opportunity to be heard. We do not find that the lack of an adjudicatory hearing in this particular situation constitutes a denial of due process. If the parents desire a fact-finding hearing where they are entitled to present additional evidence, they may refuse to consent to an informal adjustment program prior to the authorization of a petition. If they refuse, the procedures and protections of IC 31–6–4–6 are invoked. We note that in the interest of all the parties concerned, any delay between the detention hearing, the authorization of the petition, and the dispositional fact-finding hearing should be kept to a minimum. Furthermore, a parent wishing to challenge the continuing detention of a child has the remedy of a habeas corpus proceeding. We recognize the fundamental rights accorded the parent-child relationship

but we find that appellant was afforded the process due in the particular situation and accordingly affirm.

Affirmed.

HOFFMAN, P. J., concurs.

STATON, J., dissents and files separate opinion.

STATON, Judge, dissenting.

I dissent.

The appellant, Betty Jeanne Nahrwold, asks this Court to review the following issue:

Did the juvenile court err in refusing to permit Nahrwold to present witnesses and introduce evidence at the detention hearing required by IC 1976, 31–6–3–6(e) (Burns Code Ed., 1980 Repl.)?

The majority of this Court concludes that Nahrwold was not entitled to present witnesses and introduce evidence at the hearing because the "hearing was not intended to be adjudicatory in nature," and it was merely "a preliminary proceeding for the purpose of determining whether probable cause existed for the detention of the child and for the filing of the petition [alleging that the child was a 'child in need of services']." A close examination of the facts stated in the majority opinion reveals that the hearing held on March 12, 1980, was much more than a mere "probable cause" hearing. What transpired at the so-called "probable cause" hearing is best stated in the majority opinion:

"Following the caseworkers' recommendation[,] the [juvenile court] referee stated that the child would be released into Nahrwold's custody at that point in the proceedings if she consented to the program of informal adjustment [under IC 1976, 31–6–4–12 (Burns Code Ed., 1980 Repl.)]. After consultation with her counsel and with the knowledge that compliance was the only way to regain immediate custody of her child, Nahrwold consented to the informal adjustment program. The child was then released subject to the supervisory functions of the Welfare Department." (brackets added)

It is evident that the juvenile court, by requiring Nahrwold to participate in a program of informal adjustment under IC 31–6–4–12, conditioned parental custody upon Nahrwold's participation in a program of care, treatment, and rehabilitation of her child. Under such circumstances, the juvenile court was required to afford Nahrwold her rights that are enumerated in IC 1976, 31–6–3–2 (Burns Code Ed., 1980 Repl.), which the majority has chosen to cite only in part. IC 31–6–3–2 provides in full:

"(a) A parent, guardian, or custodian is entitled:

"(1) To cross-examine witnesses;

"(2) To obtain witnesses or tangible evidence by compulsory process; and

"(3) To introduce evidence in his own behalf;

"in the proceedings listed in subsection (b).

"(b) Subsection (a) applies to proceedings:

"(1) To determine whether his child is a child in need of services;

"(2) To determine whether he should participate in a program of care, treatment, or rehabilitation for his child;

"(3) To determine whether the parent or guardian of the estate should be held financially responsible for any services provided to himself or his child;

"and

"(4) To terminate the parent-child relationship.

"(c) A parent is entitled to representation by counsel in proceedings to terminate the parent-child relationship."

While the hearing held on March 12, 1980, may have been intended to be merely a "probable cause" hearing, it evolved into a proceeding "to determine whether [Nahrwold] should participate in a program of care, treatment, or rehabilitation for [her] child." IC 31–6–3–2(b)(2). As such, Nahrwold was entitled "to obtain witnesses" and "to introduce evidence" on her own behalf as provided by IC 31–6–3–2(a)(2) and (3). The juvenile court deprived Nahrwold of these rights.

A program of informal adjustment is intended to operate as a vehicle to promote

the best interests of a child who the caseworker believes is a "child in need of services." Such a program is intended to be implemented without the coercive intervention of the juvenile court. A parent's voluntary consent to the implementation of an informal adjustment program is a prerequisite to the juvenile court's approval of such a program. IC 31–6–4–12(b). However, the facts of the present case reveal that Nahrwold's consent to the program came after the juvenile court approved the caseworker's recommendation and after the court informed Nahrwold that her consent to the program was the only way to regain custody of her child. When a juvenile court informs a parent that continued parental custody of a child is conditioned upon the parent's participation in a supervised program, the role of the informal adjustment program is altered significantly. The program is transformed from a consensual arrangement between the caseworker and the parent to a court-ordered condition of regaining custody of a child. I am sure that the drafters of the Juvenile Code did not intend the program of informal adjustment to be used by a juvenile court as a sword of Damocles over a parent who seeks to regain custody of his or her child.

By agreeing to participate in a program of informal adjustment, a parent is in effect admitting that the child is a "child in need of services." Such an admission may prove to be devastating in any later proceedings, such as a proceeding to terminate parental rights. Before a juvenile court conditions regaining custody upon participation in an informal adjustment program, the juvenile court must hear the evidence that the parent has to present, particularly where the parent consents to participate in such a program solely to regain custody. The sole motivation of regaining custody vitiates the voluntariness of the parent's decision to participate in the program. It is difficult to understand how a juvenile court may force a parent to concede that his or her child is a "child in need of services" without hearing all relevant evidence.

The majority itself recognizes that an adjudication of Nahrwold's parental rights occurred at the March 12, 1980, hearing without giving Nahrwold the opportunity to present her case. The majority observes:

"If parents acquiesce in the conditions for release of the child stipulated by the court, as Nahrwold did in the present case, their rights are affected before they have an opportunity to be heard."

Despite the extensive effect of the hearing on Nahrwold's parental rights, the majority rejects Nahrwold's contention that she was entitled to protect those rights at the hearing by presenting witnesses and introducing evidence. Rather, the majority chose to afford Nahrwold and similarly situated parents with an alternate remedy that would require them to forgo custody of their children:

"If the parents desire a fact-finding hearing where they are entitled to present additional evidence[,] they may refuse to consent to an informal adjustment program prior to the authorization of a petition." (brackets added)

Such a remedy hardly presents a valid alternative for a parent who is in danger of being deprived of custody of his or her child. This is particularly true when the juvenile court referee, without permitting the parent to present any evidence relevant to the needs of the child, gives a parent the ultimatum of acquiescing in the program or forgoing custody.

The majority fears that by permitting Nahrwold to present evidence on her behalf, this Court would "unduly formalize" the informal proceedings that were intended by the legislature. Had Nahrwold consented to an informal adjustment program before the juvenile court informed Nahrwold that participation was the only means of regaining custody of her child, then I would be in complete agreement with the majority's interpretation of the legislative intent. However, the majority's expressed consternation would have some basis in fact if the informal adjustment program would have been implemented as the legislature had intended. The legislature did not enact IC 31–6–4–12 for the purpose of empowering a juvenile court to coerce a parent into participating in an informal adjustment program solely for the purpose of regaining custody. The intend-

ed consensual nature of such a program would be eradicated if such a power was vested in the juvenile court. Thus, it is not the extension of the right to present evidence that would, as the majority puts it, "impede the amicable processes intended by the legislature," rather, the so-called "amicable processes" are thwarted when the provisions of IC 31–6–4–12 are misused.

A program of informal adjustment must be the product of a consensual agreement between the caseworker and the parent *before* the program is presented to the juvenile court. If a parent refuses to participate in such a program because that parent believes his or her child is not a "child in need of services," then the juvenile court must conduct the hearing under IC 31–6–4–6(e) as a probable cause hearing, and the court must refrain from ordering "consensual agreements." In the present case, the juvenile court, without hearing Nahrwold's evidence, ordered such a "consensual agreement" under IC 31–6–4–12. I must therefore dissent to the majority opinion.