v.

**MADISON COUNTY DEPARTMENT OF PUBLIC WELFARE, Appellee (Petitioner).**

No. 2–584–A–144.

Court of Appeals of Indiana,
Second District.

May 13, 1986.
Publication Ordered June 12, 1986.

Daniel J. Smith, Dennis K. Frick, East Central Legal Services, Anderson, for appellant.

Jeffrey A. Lockwood, Thomas P. Burke, Eisele, Lockwood & Burke, Anderson, for appellee.

SULLIVAN, Judge.

N.W. (the "mother") appeals determinations of the Madison County Superior Court, one of which concluded that C.R.W. is a child in need of services [1] and another which granted an ex parte emergency detention order which permitted the Madison County Department of Public Welfare to remove N.W.'s two children from her custody. Although designated as a separate issue, N.W.'s challenge to the manner in which the ex parte emergency detention order was granted does not bear upon the substantive grounds underlying the final determination that C.R.W. was a child in need of services.[2] It is this determination which is the basis for the appeal. Therefore, N.W.'s allegations concerning the emergency detention order will be dis-

---

1. Indiana Code 31–6–4–15.3 and 31–6–4–15.4 (Burns Code Ed.Supp.1985).

2. R.N.W., the second child, although included in the trial court's ex parte emergency detention order, was not found to be a child in need of services because the Department failed to present any evidence which would support such a determination.

cussed preliminary to our discussion of the following issues:

(1) Whether, contrary to the provisions of I.C. 31-6-8-1.2 (Burns Code Ed. Supp.1985), the trial court erred in denying N.W. access to police reports made during the investigation of the alleged sexual abuse of C.R.W. by her father.

(2) Whether the trial court erred in admitting portions of hospital records which contained hearsay opinions of medical doctors not present at the fact-finding hearing and not otherwise available for cross-examination.

On August 4, 1983, the Department petitioned the trial court for an emergency detention order seeking temporary custody of R.N.W. and C.R.W. In support of its petition, the Department filed an "Affidavit of Probable Cause" alleging it had reason to believe C.R.W. had been sexually molested by her father, D.W. The trial court granted the petition and allowed the Department to assume custody over the children pending further hearing. A detention hearing was held on August 9 and 11, 1983. Proposed findings of fact concerning the desirability of detention were filed by the Juvenile Referee and approved by the trial judge on August 22, 1983.

The essential facts are not disputed. On August 3, 1983, C.R.W. was transported to the hospital at the request of her parents. C.R.W., approximately five months old, was bleeding from a vaginal laceration. At the hospital emergency room, C.R.W. was first examined by Dr. Joanne Ray, and at her request, by Dr. William Tierney. C.R.W. was treated for a laceration which extended downward from the vaginal opening towards the rectum and which was approximately one-half inch long. The edges of the laceration were jagged indicating that the injury occurred as the result of blunt force applied in a downward manner.

The proffered explanation for the cause of the injury was that the father had been in the process of changing the baby's dia-per when the injury occurred. Both parents disclaimed any knowledge of the exact cause of the injury; however, they suggested that the adhesive tab on the disposable diaper might have scratched C.R.W. and caused the laceration. The father offered an alternative explanation stating that his fingernail may have caused the injury as he slipped while changing C.R.W.'s diaper. Based upon the hospital examination and the nature of the injury, Dr. Ray filed her report of suspected child abuse, which triggered investigations by the Department and by the Anderson Police Department.

## EMERGENCY DETENTION ORDER

N.W. contends that the trial court failed to follow the prescribed statutory procedures in granting the Department's petition for an emergency detention order. N.W. argues that the procedures utilized denied due process and constituted an unreasonable and impermissible restriction of the parent-child relationship. Despite N.W.'s lengthy dissertation on the "fundamental right to family integrity," argument on this issue rests upon one contention—whether N.W. was entitled to receive notice and an opportunity to be heard prior to the granting of the Department's emergency detention petition.

N.W. contends that I.C. 31-6-4-4,[3] permitting emergency detentions was not applicable in this instance because the Welfare Department obtained a court order to obtain custody of the children. She argues that the Department was required to comply with the requirements of I.C. 31-6-4-10, which sets out the steps for requesting authority to file a petition alleging that a child is a child in need of services.

N.W.'s argument is misguided. The two statutory provisions provide alternative procedures to obtain custody over a child believed to be a child in need of services. Indiana Code 31-6-4-10 authorizes the prosecutor or the attorney for the county welfare department to initiate a petition alleging that a child is in need of services.

3. Burns Code Ed.Supp.1985.

Subsection (e) provides that *if* the petition is authorized, "the person filing may request in writing that the child be taken into custody." Obviously, this section governs those situations in which a child may be in need of services, but does not require immediate intervention to prevent impairment or endangerment.

■ Indiana Code 31–6–4–4, on the other hand, clearly permits detention of a child whose physical or mental condition appears seriously impaired or endangered, without the requirement of a court order permitting the detention. I.C. 31–6–4–4(b). *See Wardship of Nahrwold* (1981) 3d Dist. Ind. App., 427 N.E.2d 474. The fact that the Department sought and obtained a court order prior to taking custody of the children does not preclude application of the emergency detention statute.

■ The Department, through its caseworker, filed an affidavit of probable cause and obtained a court order authorizing the emergency detention. The order was issued the day after C.R.W. was treated at the hospital. Arguably, the Department could have invoked the provisions of I.C. 31–6–4–4 without the sanction of a court order. In seeking court approval, the Department went beyond the requirements for an emergency detention. This additional review, by an impartial magistrate, of the Department's decision to detain N.W.'s children does not constitute reversible error. If anything, the procedure inured to N.W.'s benefit for it interposed an additional safeguard upon the decision to detain N.W.'s children. Addressing N.W.'s argument on this issue, the trial court stated:

"I would note that I ordered that both children be taken into custody under § 31–6–4–4 and that the Trial Rule 65 arguments are applicable in the juvenile procedures only under § 31–6–7–14 and the argument could be made that children be taken into custody under two circumstances. The first being by a law enforcement officer, a probation officer, or caseworker acting on probable cause when they don't have a reasonable opportunity to get an order from the Court. The other would be when there is an order from the Court." Record at 128. The "Trial Rule 65 arguments" [4] alluded to in the trial court's statement were also included in N.W.'s brief before this court.

Citing I.C. 31–6–7–1(c) (Burns Code Ed. Repl.1980) and Trial Rule 65(B), N.W. argues that emergency detentions are in the nature of "preliminary relief," the granting of which must be preceded by notice to the parents and an opportunity to be heard, i.e., a hearing. The argument merely seeks to cloud the central issue, which is whether the emergency detention of R.N.W. and C.R.W. was in accordance with established procedures. We conclude that it was.

■ Rather than act upon its own reasonable belief that N.W.'s children were in need of services, the Department obtained an independent determination of probable cause. We fail to see how this extra step, though not provided by statute, deprived N.W. of due process. N.W. was given notice and provided an opportunity to be heard at a hearing on N.W.'s habeas corpus petition held August 8, 1983, and also at the detention hearing held on August 9 and 11, 1983. Furthermore, the trial court *did* enter findings of fact at the conclusion of the detention hearing as required by I.C. 31–6–4–6(f).[5] *See Wardship of Nahrwold,*

---

4. Indiana Rules of Procedure, Trial Rule 65 concerns preliminary injunctions and temporary restraining orders.

5. While a "less than objective" statement of facts might generally be tolerated in the interest of judicial economy, N.W.'s appellate counsel has taken considerable liberty in interpreting the record. Counsel asserts that the "trial court and the welfare department almost completely ignored these Juvenile Code prerequisites," and in particular, "no specific findings of fact were

made by the court pursuant to I.C. 31–6–4–6(f)." We direct counsel's attention to pages 575, 576 and 577 of Volume IV, supplemental record of proceedings, wherein the court stated findings and conclusions. We note also that counsel for N.W. opposed the Department's petition to include the above supplemental record of proceedings, upon grounds that "[c]ontrary to Petitioner's assertion in Paragraph 4 of its petition, Respondent-Appellant [N.W.] does *not* argue under Issue III of her Brief that she was denied

*supra,* 427 N.E.2d 474. The procedures utilized in this instance provided more than adequate protection for N.W.'s right to due process and were in compliance with the statutory requirements.

## DISCOVERY OF POLICE REPORTS

N.W. next argues that she is entitled to a reversal of the trial court's determination that C.R.W. is a child in need of services because the trial court erroneously denied her access to police reports of the sexual abuse allegation. N.W. filed a motion to produce documents on August 11, 1983, requesting the Department produce all records in its possession pertaining to the respondent and her family. The motion did not specifically identify any particular documents other than caseworker notes requested pursuant to *In re Snyder* (1981) 1st Dist. Ind.App., 418 N.E.2d 1171.

The Department produced caseworker narratives and hospital records, but refused to turn over to N.W. copies of police records. Instead, the Department returned the police records to the Anderson Police Department whereupon N.W. served *subpoenas duces tecum* upon the two investigating police officers, Brad Turner and Ronald Rheam. Upon motion by the Madison County Prosecutor, contending that police reports are work product and "never discoverable," (Record at 39) the subpoenas were quashed and discovery was denied. The State's contention in this regard is not entirely correct.

Our Supreme Court has held that "a trial court in a criminal proceeding does not have the inherent power to order production of verbatim copies of police reports over the timely work product objection of the prosecuting attorney." *State ex rel. Keaton v. Circuit Court of Rush County* (1985) Ind., 475 N.E.2d 1146. *Keaton,* however, approved the practice permitting defense counsel to examine the requested reports. 475 N.E.2d at 1148. Thus, while a defendant may not be entitled to obtain *copies* of police reports, he may discover certain information contained in the report and may be permitted to examine the reports.

More specifically with regard to the matter before us, parties and their attorneys in juvenile proceedings are granted access to law enforcement agency records. I.C. 31–6–8–1.2(b)(3). The statute does not require that a party be permitted to obtain verbatim copies of the reports. As stated in *Keaton, supra,* 475 N.E.2d 1146, it is sufficient that a party be allowed to review the reports to disclose exculpatory information which is not otherwise available. 475 N.E.2d at 1148. In the present case, although it is not entirely clear from the record, N.W. and her attorney were apparently not permitted even a minimal review of the reports.[6] Under these circumstances, we conclude the trial court erred in denying N.W. access to the police reports.

Nonetheless, N.W. is not entitled to a reversal of the determination that C.R.W. is a child in need of services. N.W. made no attempt to show that she was in any way harmed by the trial court's denial of discovery. *Gibson v. State* (1973) 2d Dist., 158 Ind.App. 575, 303 N.E.2d 666, *Cf. In re Snyder, supra,* 418 N.E.2d 1171. As pointed out by the Department, N.W. had ample opportunity to establish a record regarding the disputed reports.[7] N.W. either deposed or cross-examined every conceivable wit-

---

due process of law by the procedures followed by the trial court in determining that detention of the child should continue through the fact-finding stage of the proceeding." Supplemental Record, Volume IV, p. 588. Such blatant misstatements and representations do no credit to counsel.

**6.** We do not agree with the State's contention that heads of law enforcement agencies possess unfettered discretion regarding access to records by the parties involved. Indiana Code

31–6–8–1.2(b) expressly states that the records of a law enforcement agency are available to [a party and his attorney] *"without specific permission from the head of the agency."*

**7.** The record reflects that the juvenile referee suggested a manner in which error might be preserved, by cross-examination, yet N.W.'s counsel never asked any questions of Officer Rheam concerning the reports.

ness, including the two officers who are alleged to have made the reports. N.W. refused to have the deposition testimony transcribed; therefore, that testimony was unavailable for use at the fact-finding hearing. Officer Rheam provided extensive testimony concerning the police investigation of this incident. In light of the intense examination and cross-examination of the witnesses, we do not agree that absence of the reports "unfairly crippled the mother's ability to defend against the state's allegations in the proceedings." Appellant's Brief at 19, 24. Our determination that this technical error does not constitute grounds for reversal is limited by the particular situation presented and should not be interpreted as approval of the tactics employed herein by the Prosecutor and the Department, involving a transfer of the possession of the reports.

### HEARSAY CONTAINED IN HOSPITAL RECORDS

N.W. next asserts that she was denied the right to confront and cross-examine witnesses when the court admitted hospital records which contained opinion statements by hospital physicians who were not called to testify at the fact-finding hearing. The Department counters that the admitted hearsay notations and diagnoses were consistent with Dr. Tierney's testimony at the fact-finding hearing and therefore do not constitute reversible error even if improperly admitted. In addition, the Department alleges that N.W. introduced the same records to which she now objects, at the habeas corpus hearing, and that such records were admitted as part of the entire medical file on C.R.W.

■ We agree with N.W. to the extent that opinion testimony contained within medical records is not generally admissible. *Fendley v. Ford* (1984) 2d Dist. Ind.App., 458 N.E.2d 1167. However, even assuming that hearsay opinion statements were improperly admitted, N.W. is not entitled to a reversal if the same or similar evidence was admitted without objection. *Morris v.*

*State* (1982) 1st Dist. Ind.App., 433 N.E.2d 74.

■ N.W.'s characterization of Dr. Tierney's testimony as equivocal is not consistent with the record. Although Dr. Tierney testified on cross-examination that C.R. W.'s injury could have occurred as a result of a forceful blow to the vaginal area, he also stated that such an injury

"would be unlikely because the way a baby's put together. They have nice large buttocks that come together and protect that area of their body." Record at 143.

Dr. Tierney also testified his involvement in the case came about as a result of Dr. Ray's request that he examine C.R.W. Furthermore, the record is replete with references to what Dr. Ray and Dr. Kepner opined as to the suspected cause of the injury. N.W.'s counsel elicited testimony regarding a discussion between Dr. Tierney and Dr. Ray concerning the standard of conduct which is applicable to cases involving suspected penetration of the vaginal area. The basic conclusions or diagnoses of all the doctors involved are virtually identical, differing only in the manner in which stated. In light of the similarity of the doctors' statements in the medical reports and at the fact-finding hearing, and the consensus that the cause of the injury was possibly sexual abuse, we conclude that the opinion statements in the medical reports were merely cumulative to the testimony provided by Dr. Tierney. *Morris v. State, supra,* 433 N.E.2d 74.

The judgment is affirmed in all respects.

BUCHANAN, C.J., and SHIELDS, J., concur.