In the Matter of E.M., A Child Alleged To Be In Need of Services.

Anita McHENRY, Appellant,

v.

BARTHOLOMEW COUNTY DEPARTMENT OF PUBLIC WELFARE, Appellee.

No. 03A04–9102–JV–57.

Court of Appeals of Indiana, First District.

Nov. 21, 1991.

---

Julia Ann Caudill, Columbus, for appellant.

Stanley A. Gamso, Lawson, Pushor, Mote & Coriden, Columbus, for appellee.

1. IND.CODE 31–6–4–3.

BAKER, Judge.

Respondent-appellant Anita appeals from the trial court's determination that E.M., Anita's 13–year old daughter, is a child in need of services (CHINS).[1] Anita raises several issues for our review, but the dispositive question is whether the trial court erred in finding E.M. is a child in need of services.

We reverse.

### FACTS

On April 23, 1990, 13–year old E.M. complained to her neighbor, Ernie Caldemone, that she was being unduly and abusively punished at home. She made a similar complaint on April 24, 1990, to her school bus driver, Ralph Cox. Both individuals contacted the Bartholomew County Department of Public Welfare (D.P.W.) to report E.M.'s complaints.

Carol Gwin, a caseworker in the child welfare department of the D.P.W., began an investigation into E.M.'s allegations. Ms. Gwin interviewed E.M. at school on April 25, 1990, and an emergency detention hearing was held the same day. E.M. reported to Ms. Gwin she was punished by being sent to the basement where she was forced to stand with her nose to the wall for long periods of time. She spoke of being required to eat and do her homework while confined to the basement. She also indicated she had been grounded for several years, and she had not been allowed to have friends visit at her house in over a year. E.M. never alleged, however, that she was physically abused, nor was there any evidence of physical abuse.

As a result of the April 25, 1990, emergency hearing, E.M. was removed from her home and placed in a foster home. The court ordered another detention hearing held on April 27, 1990, and the D.P.W. filed a petition on May 3, 1990, alleging E.M. was a child in need of services. E.M. was declared a ward of the D.P.W. on August 29, 1990.

E.M.'s natural mother, Anita, holds an undergraduate degree in psychology and

sociology, and a Master's degree in counseling and guidance. She is employed as a vocational rehabilitation counselor and acting supervisor of the Vocational Rehabilitation office in Columbus, Indiana. Anita divorced E.M.'s natural father, John, in January 1985, and Anita and John have had a very bitter relationship since that time. John, who lives in an apartment in Marion, Indiana, was diagnosed with multiple sclerosis and is confined to a wheelchair. The final dissolution decree granted Anita custody of E.M. and gave John visitation with E.M. during most of E.M.'s summer vacations. E.M. has repeatedly expressed a strong desire to live with her father, and Anita believes this desire has controlled and directed E.M.'s behavior.

In support of finding that E.M. was a child in need of services, the trial court concluded that Anita's live-in boyfriend, David, was a primary source of E.M.'s problems at home. David had moved in with Anita, E.M., and another of Anita's children[2] in August 1986. David co-owned the house, was self-employed, and did most of his work at home. Because his schedule permitted him to be home when E.M. and her older half-brother arrived home from school, David was responsible for disciplining the children until their mother returned home from work. Anita testified, however, that David called her at work if there was a problem at home that needed to be discussed. E.M. testified that she did not like David, and reported that he called her "stupid", "bitch", and "little asshole." *Record* at 286, 303. The trial court found that David imposed the discipline on E.M.

The trial court also found that Anita and David made only negative comments about E.M. during meetings with the D.P.W., and that Anita's attitude revealed she believed E.M. was "the entire problem in her household." *Record* at 100. Anita also refused to "start over with E.M.," *Record* at 611, as suggested by Eileen Bennett, E.M.'s counselor since February 1988. The court interpreted this refusal to be an indication Anita was unwilling to alter her strict disciplinary techniques, techniques the court found were inappropriate for E.M. The court concluded that E.M.'s counseling would not be effective until Anita altered her behavior.

In addition, the trial court found E.M. suffered from emotional abuse. To support this finding, the court relied heavily on Ms. Bennett's testimony regarding E.M.'s emotional state. The court noted that Ms. Bennett believed E.M. exhibited symptoms that could be the result of emotional abuse, and that E.M. needed the services extended to her by the D.P.W.

The trial court held a modification hearing on November 21, 1990, at which time E.M. was ordered removed from the foster home and placed in the Adolescent Unit of Jefferson Hospital in Jeffersonville, Indiana. She was discharged from the Adolescent Unit on December 27, 1990, and returned to her mother's home. Although E.M. has continued to live with her mother since that time, she remains a ward of the D.P.W.

## STANDARD OF REVIEW

■ On Anita's motion, the trial court made specific findings of fact and conclusions of law under Ind.Trial Rule 52(A). When reviewing such findings and conclusions, we first determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Vanderburgh County v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 665. In practice, however, this court actually makes its determination by starting at the end and moving forward. That is, we look first to see whether the findings support the judgment; if they do not, our review is concluded. We will reverse the trial court's judgment only if it is clearly erroneous. A judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions of law entered on those findings. *Id.*

2. Anita was first married to Steven. Two children were born during that marriage: a 15–year old son, who lived with Anita, and a 19–year old daughter, who lived with her father before attending Indiana University at Bloomington.

If we conclude the findings support the judgment, then we determine whether the evidence supports the findings. When making this determination, we will not reweigh the evidence or assess the credibility of the witnesses. Rather, we consider only the evidence and reasonable inferences drawn therefrom which support the finding. *Id.* at 666. Findings of fact that are clearly erroneous, based on the evidence presented, cannot support the judgment. *Id.* at 665. Findings of fact entered in favor of the party bearing the burden of proof are clearly erroneous when there is no substantial evidence of probative value to support the findings. *Id.* at 666–67. Further, even when there is supporting evidence, the findings are clearly erroneous if we are left with a definite and firm conviction a mistake has been made. *Id.* at 667.

## DISCUSSION AND DECISION

Anita argues there was insufficient evidence to support the trial court's finding that her daughter was a child in need of services. We fear she asks us to reweigh the evidence, a task in which we may not engage. *Vanderburgh County, supra,* at 666. After reviewing the record, however, we conclude that many of the findings were insufficient to support the judgment, while others, even if sufficient, were unsupported by the evidence. When we review the record as a whole, therefore, we are unable to conclude E.M.'s mental or physical health was seriously impaired or endangered by her mother's parenting, as required under IND.CODE 31–6–4–3 to sustain a CHINS adjudication. Even when we consider the cumulative effect of the findings, as was advanced by the D.P.W. at oral argument,[3] we still conclude they did not support the judgment that E.M. was a child in need of services.

The decision to intervene in this case was based on the D.P.W.'s assertion that E.M. was a child in need of services as defined by IND.CODE 31–6–4–3, which provides, in relevant part:

(a) A child is a child in need of services if before his eighteenth birthday:

(1) his physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of his parent, guardian or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision;

(2) his physical or mental health is seriously endangered due to injury by the act or omission of his parent, guardian, or custodian;

. . . .

and needs care, treatment, or rehabilitation that the child is not receiving, and that is unlikely to be provided or accepted without the coercive intervention of the court.

The State had the burden at trial of proving by a preponderance of the evidence that under the above statute E.M. was a child in need of services. *Tucker v. Marion County Department of Public Welfare* (1980), Ind.App., 408 N.E.2d 814, 819.

The United States Supreme Court has recognized that the relationship between parent and child is constitutionally protected. *Quilloin v. Walcott* (1978), 434 U.S. 246, 255, 98 S.Ct. 549, 554, 54 L.Ed.2d 511. Specifically, the Court has ruled that the Due Process Clause of the Fourteenth Amendment protects freedom of personal choice in family life matters. *Cleveland Board of Education v. LaFleur* (1974), 414 U.S. 632, 639–40, 94 S.Ct. 791, 796, 39 L.Ed.2d 52, 60. This court has interpreted this protected freedom of choice to include "the parent's fundamental right to raise [his or] her child without undue interference by the state." *Wardship of Nahrwold v. Department of Public Welfare* (1981), 427 N.E.2d 474, 477. This right is not unlimited, however, as the state has a compelling interest in protecting the welfare of children. *Matter of Joseph* (1981), Ind.App., 416 N.E.2d 857, 860.

---

3. Oral argument was heard in this case at the Indiana University School of Law in Blooming-

ton on October 31, 1991.

When the parents neglect, abuse, or abandon their children, the state has the authority under its *parens patriae* power to intervene. *Id.*

### (A) *Punishment*

■ We begin by addressing the trial court's conclusion that E.M. was excessively punished after finding she was forced to stand in the basement with her nose to the wall for long periods of time. While we agree with the trial court that this type of punishment could be excessive, the evidence in this case did not support the conclusion that E.M.'s punishment was excessive.

It was uncontroverted that the basement was really the lower level of the house with a patio door overlooking Grandview Lake. The interior was partially finished, and served as a study and guest room. Anita testified that she began sending E.M. to the basement as punishment, rather than to her room, because E.M. liked being sent to her room. The purpose of the punishment, as identified by Anita, was to give E.M. time to reflect on her behavior. Both Anita and E.M. testified that E.M. was permitted to return to the upstairs when she was ready to discuss her behavior.

In addition, E.M. was never physically confined to the basement, and there was no evidence this punishment ever deprived her of food, sleep, or other physical necessities. E.M. testified that she either returned to the upstairs to eat or she ate in the basement, and she always went upstairs to bed at her normal bedtime of 8:30 p.m. E.M. also testified that the longest time she had ever stayed in the basement was for a two day period. Anita testified that she believed the longest time was 45 minutes, while the most consecutive days the basement punishment was imposed, for short periods of time, was five or six days. When asked what he believed was the longest time E.M. stayed in the basement, E.M.'s half-brother testified, "I wouldn't say more than a half hour." *Record* at 495. Because none of these versions represents to this court excessive confinement,

the evidence did not support the conclusion that E.M. was excessively punished.

Although there may have been more effective ways to direct E.M.'s behavior, the D.P.W. may not intervene simply because it disagrees with the parent's chosen punishment. Intervention is not justified unless the punishment seriously impairs or endangers the child's emotional or physical well-being. IND.CODE 31–6–4–3. As stated by this court in a case involving the involuntary termination of parental rights, "[c]hildren are not removed from the custody of their parents because there is a better place for them, but because the situation while in the custody of their parents is wholly inadequate for their survival." *J.K.C. v. Fountain County Department of Public Welfare* (1984), Ind.App., 470 N.E.2d 88, 93.

■ We also conclude the trial court erroneously found E.M. had been grounded for several years. While we agree that grounding a child for extended periods could, under certain circumstances, deprive a young child of healthy emotional development, no such grounding occurred here. E.M. testified that she had been involved in girls' basketball and cheerleading the prior school year. She did not participate in these activities during her eighth grade year because she hurt her ankle at camp. The evidence of E.M.'s involvement in girls' basketball, cheerleading and camp does not support a finding that she was confined to a restrictive environment that seriously impaired or endangered her emotional well-being.

■ In addition to concluding that E.M. was excessively punished, the trial court also found that Anita's methods of discipline and control were inappropriate for E.M., and, in fact, prevented her from benefitting from counseling. This finding was insufficient to support the judgment that E.M. was a child in need of services. Courts may not dictate to parents how to raise their children absent a showing that the parents' methods seriously impair or endanger the children's physical or mental well-being. IND.CODE 31–6–4–3. Here, instead of finding that Anita's methods ser-

iously impaired or endangered E.M., the trial court found only that they were inappropriate. A court must find more than inappropriateness to support intervention.

Furthermore, in light of the evidence, this finding improperly invaded Anita's "fundamental right to raise [E.M.] without undue interference by the state." *Wardship of Nahrwold, supra.* Here, the health care professionals disagreed about what type of environment was best for E.M. Ms. Bennett, E.M.'s counselor of two years, testified that there are two schools of thought on how to deal with a child like E.M., whom she described to be argumentative, defiant, stubborn, and rejecting of parental authority. *Record* at 609. Ms. Bennett admitted that some professionals advocate structuring the child's life, while other professionals, including Ms. Bennett, advocate a less structured environment. Dr. Conlee, a clinical psychologist, testified that he believed E.M. needed a very structured environment. The trial court, apparently embracing a less structured environment, rejected Anita's strict parenting style, even though there was support for her methods in the professional community. In light of the conflicting expert testimony, we conclude that it was inappropriate in this case to find one parenting style was appropriate for E.M. to the exclusion of the other. The conclusion that Anita needed to change her parenting style amounted to nothing more than the trial court improperly substituting its judgment for Anita's.

**(B)** *Discipline by a Non–Family Member*

■ The trial court also found David imposed the discipline on E.M., a finding we conclude was insufficient to support the CHINS determination. In today's society, many parents must rely on help from others to supervise their children, and with the responsibility to supervise may come the responsibility to discipline. IND.CODE 31–6–4–3(a)(1) provides that a child is in need of services if "his physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of his parent ... to supply him with ... supervision." This provision does not require parents to be the only supervisors of their children, but it does make them responsible for ensuring their children are adequately supervised.[4] We cannot conclude from this statute that it is solely the parent who must impose the discipline on his or her child, even though a parent may allow others to supervise the child. Accordingly, the trial court's finding that David imposes the discipline on E.M. was insufficient to support the judgment that E.M. was a child in need of services.

■ Furthermore, even if the above finding was sufficient to support the CHINS determination, we conclude the evidence did not support the finding. Anita was a working mother who could not be home with her adolescent children when they returned home from school. Here, David was home to provide adult supervision. It was unrefuted that David called Anita at work when a problem arose that needed to be discussed, and there was no evidence David was the primary disciplinarian when Anita was home. Because the evidence did not support the finding that David, and not Anita, imposed the discipline on E.M., this finding was not sufficient to support the judgment.

**(C)** *Emotional Abuse*

■ The trial court also found that David was emotionally abusive towards E.M. based on E.M.'s allegations that David had called her "stupid," "bitch," and "little asshole." *Record* at 286. We are mindful that IND.CODE 31–6–4–3(a)(2) provides for a CHINS determination if the parent's act or omission causes an injury

---

**4.** We do not hold, however, that lack of parental supervision is never sufficient to support a CHINS determination. In *Matter of M.R., W.D. and C.J.* (1983), Ind.App., 452 N.E.2d 1085, 1089, this court upheld a CHINS determination based on lack of parental supervision after finding that the mother always left her children with babysitters, sometimes failing to leave food, money or clothes for their care, while she spent a great deal of her time in a tavern. *Id.* In essence, the mother provided no parental supervision, and we found this was detrimental to her children's well-being.

seriously endangering the child's physical or mental health. Under this provision, a child may be declared a CHINS if the parent fails to take action to stop abusive treatment of the child by another. *Alexander v. La Porte County Welfare Department* (1984), Ind.App., 465 N.E.2d 223, 226. In *Alexander,* for example, this court upheld the termination of the mother's parental rights because she failed to protect her daughter from being physically abused by the mother's boyfriend. *Id.*

■ In this case, both David and E.M.'s half-brother testified that David said only that E.M. did "stupid things," *Record* at 434–35, 489, while David also recalled that he once told E.M. to "stop acting like a little asshole." *Record* at 435. David said the command was elicited because E.M. had done something he believed was extremely detrimental to herself and demonstrated extreme disrespect for her half-brother and mother. *Record* at 435. Although we do not condone this kind of treatment, when taken in context, we are unable to say these were emotionally abusive statements. As such, they were insufficient to support the finding that David emotionally abused E.M. Because the finding was unsupported by the evidence, it could not support the judgment that E.M. was a child in need of services.

In finding E.M. was emotionally abused, the trial court also placed great weight on the testimony of E.M.'s counselor of two years, Eileen Bennett. Specifically, the court found Ms. Bennett testified that E.M. exhibited symptoms that could be the result of emotional abuse.[5] While Ms. Bennett did testify that E.M. exhibited symptoms of emotional abuse, including lying,

temper tantrums, and being argumentative, she also testified that these could be symptoms of a number of problems. She concluded by stating, "Are they symptoms of emotional abuse? Are they symptoms of conflict between her mom and her dad over their divorce? Are they symptoms of her personality that's not formed very well? I mean I'm not real sure I could say that they were exactly symptoms of [emotional abuse]." *Record* at 575. This equivocal testimony was not sufficient to support the trial court's finding that E.M. was emotionally abused by Anita and David.

Furthermore, two other health care professionals also gave opinion testimony about possible emotional abuse after meeting with E.M. When asked if she had seen evidence of abuse in E.M., Jean Everroad, the court appointed special advocate for E.M., responded, "No. I've seen [E.M.'s] perception of abuse." *Record* at 647. Similarly, Dr. Conlee, a clinical psychologist, testified unequivocally that E.M. did not present the test profile of an abused child. *Record* at 699–700, 719–20. Despite the fact that none of the testifying health care professionals believed Anita and David had emotionally abused E.M., the trial court nonetheless found E.M. was emotionally abused. This finding, being unsupported by substantial evidence of probative value, was clearly erroneous. *Vanderburgh County, supra.*

## CONCLUSION

After reviewing the record in its entirety, it is clear to this court the trial court's judgment that E.M. was a child in need of services was clearly erroneous. Many of the findings did not support the judgment that Anita seriously impaired or endan-

---

5. Rather than finding E.M. was emotionally abused, the trial court actually found it was Ms. Bennett who believed E.M. may have been emotionally abused. As stated by the court, this was an insufficient finding. The purpose of making findings of fact and conclusions of law under T.R. 52(A) is to provide the reviewing court with the legal basis upon which the trial court made its decision. *Sanders v. Sanders* (1983), Ind. App., 452 N.E.2d 1057, 1058. When the statement of the trial court's findings is insufficient, we may remand the issue to the trial court with instructions to enter more specific findings and

conclusions pursuant to Ind.Appellate Rule 15(N)(4). In light of the trial court's comments in the record and the three page list of findings and conclusions entered by the court in this case, we find ourselves adequately informed about the basis of the trial court's decision. To remand this issue to the trial court with instructions to enter more specific findings and conclusions would be unnecessary and against the interest of judicial economy. *Id.* Accordingly, we accept the trial court's findings as they concern emotional abuse of E.M.

gered E.M.'s physical or mental health as a result of her inability, refusal, or neglect to supply E.M. with necessary food, clothing, shelter, medical care, education, or supervision, or that she seriously endangered E.M.'s physical or mental health due to an act or omission. IND.CODE 31–6–4–3. Furthermore, the findings that were sufficient to support the judgment were not supported by the evidence.

Because the findings did not support the judgment, and the evidence did not support the findings, the decision of the trial court is reversed with instructions to vacate the order adjudging E.M. a child in need of services.

RATLIFF, C.J., and ROBERTSON, J., concur.